FILED
ASHEVILLE, NC

APR 17 2025

U.S. DISTRICT COURT
W. DISTRICT OF N.C.

# UNITED STATES DISTRICT COURT

for the

_WESTERN_ District of _NORTH CAROLINA_

_ASHEVILLE_ Division

| | | |
|---|---|---|
| JOHNNY CALVIN OLLIS | ) | Case No. 1:25-cv-116-MOC |
| _Plaintiff(s)_ | ) | _(to be filled in by the Clerk's Office)_ |
| _(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)_ | ) ) ) ) | DEFENDANTS DARREN HINSON, LENTON DONNELL, |
| –v– | ) ) | KIRK GILES, STEPHEN JACOBS, C.O. MR. LEE, LARRY GODWIN, |
| LADONNA BROWNING, JOSH PANTER, | ) ) | CASSANDRA HOWELL, EDWARD BASDEN, |
| _Defendant(s)_ | ) | LARRY WILLIAMSON |
| _(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)_ | ) | |

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(Prisoner Complaint)

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

Case 1:25-cv-00116-MOC    Document 1    Filed 04/17/25    Page 1 of 27

## I.     The Parties to This Complaint

### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

Name                                    JOHNNY CALVIN OLLIS

All other names by which
you have been known:             NONE

ID Number                             0306262

Current Institution               RUTHERFORD CORR. CENTER

Address                               P.O. BOX 127, 549 LEDBETTER ROAD

                                         SPINDALE                 N.C.          28160
                                         City                          State         Zip Code

### B.     The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

Name                                   LADONNA BROWING

Job or Title *(if known)*           WESTERN REGION DIRECTOR

Shield Number                       NOT KNOWN

Employer                              N.C. DIVISION OF ADULT CORRECTIONS

Address                               309 COLUMBO STREET, SUITE 101

                                         VALDESE                   N.C.          28690
                                         City                          State         Zip Code

☒ Individual capacity     ☒ Official capacity

Defendant No. 2

Name                                   JOSH PANTER

Job or Title *(if known)*           OPERATIONS DIRECTOR

Shield Number                       UNKNOWN

Employer                              N.C. DIVISION OF ADULT CORRECTIONS

Address                               831 WEST MORGAN STREET

                                         RALEIGH                   N.C.          27603
                                         City                          State         Zip Code

☒ Individual capacity     ☒ Official capacity

Defendant No. 3
- Name    DARREN HINSON
- Job or Title *(if known)*    POPULATION MANAGEMENT
- Shield Number    UNKNOWN
- Employer    N.C. DIVISION OF ADULT CORRECTION
- Address    831 WEST MORGAN STREET
  RALEIGH    N.C.    27603
  *City*    *State*    *Zip Code*

☒ Individual capacity    ☒ Official capacity

Defendant No. 4
- Name    LENTON DONNELL
- Job or Title *(if known)*    WARDEN, NEW HANOVER CORR. CENTER
- Shield Number    UNKNOWN
- Employer    N.C. DIVISION OF ADULT CORRECTION
- Address    330 DIVISION DRIVE
  WILMINGTON    N.C.    28401
  *City*    *State*    *Zip Code*

☒ Individual capacity    ☒ Official capacity

**II. Basis for Jurisdiction**    ( SEE ATTACHED REMAINING DEFENDANTS 5 thru 11 )

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A. Are you bringing suit against *(check all that apply)*:

☐ Federal officials (a *Bivens* claim)

☑ State or local officials (a § 1983 claim)

B. Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

1st AMENDMENT, RETALIATION; 14th AMENDMENT, EQUAL PROTECTION, DISCRIMINATION

C. Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials? N/A

DEFENDANT No. 5, NAME: KIRK GILES

TITLE: WAS ASSISTANT WARDEN AT NEW HANOVER C.C., HAS SINCE LEFT, "UNKNOWN"

SHIELD NUMBER: UNKNOWN

EMPLOYER: N.C. DIVISION OF ADULT CORRECTION

ADDRESS: UNKNOWN

    ☒ INDIVIDUAL CAPACITY    ☒ OFFICIAL CAPACITY


DEFENDANT No. 6, NAME: STEPHEN JACOBS

TITLE: SOUTH CENTRAL REGION DIRECTOR

SHIELD NUMBER: UNKNOWN

EMPLOYER: N.C. DIVISION OF ADULT CORRECTION

ADDRESS: 180 SANDHILLS DRIVE, BUILDING A, McCAIN, N.C. 28361

    ☒ INDIVIDUAL CAPACITY    ☒ OFFICIAL CAPACITY


DEFENDANT No. 7, NAME: CORRECTION OFFICER MR. LEE (FIRST NAME UNKNOWN)

TITLE: CORRECTION OFFICER

SHIELD NUMBER: UNKNOWN

EMPLOYER: N.C. DIVISION OF ADULT CORRECTION

ADDRESS: 330 DIVISION DRIVE, WILMINGTON, N.C. 28401

    ☒ INDIVIDUAL CAPACITY    ☒ OFFICIAL CAPACITY

DEFENDANT No. 8, NAME: LARRY GODWIN
TITLE: WARDEN, RUTHERFORD CORRECTION CENTER
SHIELD NUMBER: UNKNOWN
EMPLOYER: N.C. DIVISION OF ADULT CORRECTION
ADDRESS: 549 LEDBETTER ROAD, SPINDALE, N.C. 28160
☒ INDIVIDUAL CAPACITY      ☒ OFFICIAL CAPACITY

DEFENDANT No. 9, NAME: CASSANDRA HOWELL
TITLE: PROGRAMS, CASE MANAGER AT RUTHERFORD CORRECTION CENTER
SHIELD NUMBER: UNKNOWN
EMPLOYER: N.C. DIVISION OF ADULT CORRECTION
ADDRESS:  549 LEDBETTER ROAD, SPINDALE, N.C. 28160
☒ INDIVIDUAL CAPACITY      ☒ OFFICIAL CAPACITY

DEFENDANT No. 10, NAME: EDWARD BASDEN
TITLE: WAS WARDEN OF NEW HANOVER C.C., NOW WARDEN AT PENDER C.I.
SHIELD NUMBER: UNKNOWN
EMPLOYER: N.C. DIVISION OF ADULT CORRECTION
ADDRESS: 906 PENDERLEA HIGHWAY, BURGAW, N.C. 28425
☒ INDIVIDUAL CAPACITY      ☒ OFFICIAL CAPACITY

DEFENDANT No. 11, NAME: LARRY WILLIAMSON
TITLE: ASSISTANT OF WESTERN REGION DIRECTOR LADONNA BROWING
SHIELD NUMBER: UNKNOWN
EMPLOYER: N.C. DIVISION OF ADULT CORRECTION
ADDRESS: 309 COLUMBO STREET, SUITE 101, VALDESE, N.C. 28690
☒ INDIVIDUAL CAPACITY      ☒ OFFICIAL CAPACITY

ISSUE I.

1. During Plaintiff's 3 year stay at New Hanover Corr. Center he was outspoken concerning policy violations that adversely affected all inmates as other inmates were afraid to speak out due to fear of retaliation by prison officials. Each time Plaintiff would speak to the Warden, Mr. Lenton Donnell concerning such, Mr. Donnell would rebuff Plaintiff in person or else shun Plaintiff's written requests. After each incident Plaintiff would contact senior officials in Raleigh who instructed Mr. Donnell to comply with written policy:

  A. Mr. Donnell was ordered to provide sanitary mattress covers per policy

  B. Mr. Donnell was ordered to provide summertimes shorts per policy.

  C. Mr. Donnell was ordered to provide privacy curtains for toilets per DAC policy as well as PREA policy "Prison Rape Elimination Act."

  D. Mr. Donnell was ordered to follow PREA policy by having an extra officer present during body cavity strip searches.

  E. Mr. Donnell was ordered to provide appropriate canteen time for all inmates instead of only certain inmates.

2. On 7/3/24 Plaintiff was found to be in rule violation by correction officer (C.O.) Mr. Lee in that Plaintiff had some tobacco while C.O. Lee was processing Plaintiff's personal

property Mr. Donnell saw that Plaintiff had a plastic knife at which time Mr. Donnell instructed C.O. Mr. Lee to write Plaintiff an infraction for having a weapon.

3. C.O. Mr. Lee later told Plaintiff he had not planned to do so until Mr. Donnell ordered him to do so.

4. This same flimsy, dull, plastic knife had been in Plaintiff's locker in plain sight for almost 3 years with nothing said by prison officials through numerous random locker searches; these plastic knives were also condoned when Plaintiff had been housed in both the medium and close custody prisons. This is true because prison staff are aware these plastic knives are harmless because they will not cut or stab a person. Inmates use them to slice canteen items such as sausages or sandwiches. A pencil, ink pen, or razor has more potential for danger, all sold in the canteen.

5. These plastic knives are in fact provided to inmates by prison staff as they allow them to enter the prison through outside food sales and often contained within the food utensil condiments packages that usually come with each meal. Other times, C.O.'s will leave plastic knives around from their own meals that inmates gather if they do not participate during food sales.

6. For these reasons many inmates have a plastic knife and Plaintiff could easily gather up some upon request if necessary to prove this statement true.

7. Plaintiff's fellow inmates found it amazing that Plaintiff was written the infraction, an A-charge, the most serious of

offenses an inmate can receive, a weapons charge. Mr. Donnell had to know this infraction was especially harmful to Plaintiff as Plaintiff was soon to be considered for parole. Plaintiff was compelled to plea guilty to this charge because the hearing officer made it clear she would find Plaintiff guilty in any event but if Plaintiff plead guilty his punishment would be less severe.

8. Three of Plaintiff's fellow inmates were willing to sign a sworn declaration attesting to the fact that inmates other than Plaintiff have and use these plastic knives all the time, even in the presence of prison staff with no fear of infraction. See attached (EXHIBITS A 1-3). Many more declarations can be provided if necessary.

9. Plaintiff has made numerous attempts to have the infraction dismissed by the Defendants named in this action, but was ignored.

10. Plaintiff filed a grievance in order to exhaust this matter by administrative remedy but it was rejected because the rules will not allow a infraction to be grieved through grievance process. (see attached grievance and rejection statement)

11. Plaintiff believes the facts outlined above show Defendants Mr. Lee and Mr. Donnell violated his First Amendment right to be free from retaliation as well as his Fourteenth Amendment right to equal protection and discrimination in that other inmates living with Plaintiff were not being punished for having these plastic knives.

ISSUE II.

1. During the past decades and at present time, inmates having life sentences, under written policy are allowed to participate in off site job assignments. The following word for word excerps are quoted from the North Carolina Division of Adult Corrections Policy and Procedure Rules:

Chapter E.0700 Work Release

E.0702 WORK RELEASE ELIGIBILITY

(c) Inmates sentence or crimes committed after July 1, 1981 who are not court recommended for work release are eligible for work release under conditions set forth in E.0703 (c).

E.0703 WORK RELEASE CONDITIONS

(c) (1) Those sentenced to greater than five years must be within three years of the maximum release date or parole eligibility date except as approved by the Director of Prisons.

E.0706 PROCESSING PROCEDURES

The following procedures specify actions to be taken to process work release for each eligibility category defined in E.0702.

(d) The following applies to all inmates serving sentences greater than 5 years.

(1) The Region Director or designee is the approving authority for work release for inmates with life sentences and inmates with sentences totaling 80 years or greater. The Facility Head may refer additional cases to the Region Director or designee, if the Facility Head deems the specific case warrants it. unquote.

2. Per the above policy many lifers across the state who are within 3 years of a parole eligibility date are now being allowed to participate in assignments to off site jobs.

3. Because Plaintiff's first parole eligibility date was on 6/15/22 Plaintiff has been eligible for an off site job 3 years prior to 6/15/22 which would have been the date of 6/15/19, almost six years ago. At the time of this writing Plaintiff is currently being considered for parole for the date of 6/12/25. Plaintiff has been in minimum custody since 8/20/20, almost five years and has yet to be assigned an off site job. When Plaintiff brought up the fact that other lifers have had off site jobs at Plaintiffs current location of Rutherford, the Warden Mr. Larry Godwin and Head Programmer Ms. Cassandra Howell responded that those lifers were "special."

4. Plaintiff can offer proof that Mr. Godwin and Ms. Howell does not follow policy but rather assigns off site jobs under mostly a favoritism agenda. For example: Many inmates who are currently on work release or other off site jobs have been chosen even though these inmates have had recent disciplinary charges that are serious A-charges such as dirty urines or having been caught sneaking in contraband; these inmates will get fired from those jobs and some of them will be back on work release in just a few weeks or months while other inmates, including Plaintiff are passed over; this occurs all the time.

5. When Plaintiff submitted his first grievance requesting an off site job, programmer Mr. Howell responded with a lie by claiming a Lifer must be in minimum custody for 8 years before being allowed an off site job. Upon appeal, Mr. Godwin went along with this false policy. (See attached grievance.)

6. Plaintiff then submitted a second grievance requesting to see the so-called 8 year policy at which time Mr. Howell's co-worker programmer Mr. Cynthia Brewer responded at which time she ignored the request to show Plaintiff the 8-year policy yet backed Mr. Howell. Upon appeal to Mr. Godwin, he back-tracked and now instructed Plaintiff to submit an off site job request to Mr. Howell and if Mr. Howell approved, the final decision would come to him for consideration. Plaintiff has submitted the request to Mr. Howell and to date she has refused to respond.

7. When Plaintiff was housed at New Hanover, the Wardens cited a different lie that policy states a Lifer must have a MAPP to be allowed to go outside the fence. During this same time, New Hanover officials offered Plaintiff a canteen job which requires inmate to be outside the fence; when Plaintiff brought up their so-called policy, the responded, quote: "Don't worry about it, we'll work it out." When Plaintiff responded he would rather have a different job off site, the Warden went back to his policy that a Lifer must have a MAPP to go outside the fence.

8. Plaintiff would further point out that if it were in fact policy that a Lifer must have a MAPP "Mutual Agreement Parole Program" to get work release, it would in fact be very prejudicial to a Lifer because MAPP's normally allow the inmate work release for his last 12-18 months which would cause him to be able to save only half the amount or even less funds to prepare him for his release, in comparison to the double amount he could save if policy were followed allowing him 36-months of work release. The reason this is so prejudicial is that most lifers have a lot less to go back to in society in comparison to others who have been locked up many years less, still have family and resources that Lifers for the most part do not.

9. This refusal to follow policy has already costs Plaintiff a considerable of funds that he will need upon eventual release.

10. Plaintiff lists the following Defendants in this matter because their positions of authority is required to approve the off site job and Plaintiff has contacted every single one only to be lied to or ignored: Warden Larry Godwin, Head Programmer Cossandra Howell, Warden Edward Basden, Assistant Warden Kirk Giles, Western Region Director Ladonne Browning, South Central Region Director Stephen Jacobs, Western Region Office Designee Larry Williamson, Warden Lenton Donnell.

11. Plaintiff believes the facts outlined above show Defendants listed have violated Plaintiff's Fourteenth Amendment right to equal protection and to be free from discrimination in that many

other Lifers at various minimum custody prisons are being allowed off site jobs, including work release as policy allows and are not being lied to as Plaintiff (and other Lifers) is by Defendants.

ISSUE III

1. On October 17, 2003 Plaintiff filed a civil action alleging prison officials refused to accommodate his "paruresis" (shy bladder) during drug testing by allowing him privacy. This action was ultimately dismissed for failure to exhaust administrative remedies, but in his final paragraph Honorable Mullen stated, quote: "Finally, the Court concludes by noting that Plaintiff has attached a document indicating that he now has a diagnosis of paruresis and this Court therefore cautions that any future failure to reasonably accommodate Plaintiff's medical condition might constitute a violation of Plaintiff's constitutional rights," unquote. This case was (OLLIS v. BENNETT, et al., No: 1:03-CV-257-1-MU).

2. Prison officials accommodated this diagnosis and the Judges warning until Plaintiff transferred back to the western district at which time they refused to follow the Doctor's order and further stated the Judge had no say in the matter. After the Attorney General warned them the prison officials also stated the A.G. had no say in the matter.

3. For these reasons Plaintiff filed once again on December 18, 2008. (OLLIS v. BYRD, et al., No. 1:08-CV-549-3-MU). Immediately after filing and on January 12, 2009 Defendant Director of Prisons Mr.

Boyd Bennett placed as security alert on Plaintiff's OPUS stating, quote: "Do not move/transfer without Director's approval." unquote. This was done as a show of good faith because Plaintiff's also showed retaliation transfers in his filing. Plaintiff's attorney assured Plaintiff this security alert would not hinder Plaintiff's own request to transfer. Plaintiff has twice transferred upon his own request since 2009. This matter was ultimately settled out of court.

4. Years later prison officials yet again refused to accommodate Plaintiff's paralysis and again retaliated against him for speaking out, so on October 4, 2018 another action was file in the Eastern District, (OLUS v. HAWKINS, et al., 5:18-cf-3276-D).

5. The Court allowed Plaintiff to proceed on the 8th Amendment claim as well as the 1st Amendment retaliation claim. Plaintiff declined a settlement offer and the Court declined to appoint counsel despite Plaintiff's concerns he could not adequately represent himself. The Judge insisted Plaintiff was experienced enough. During Plaintiffs opening statement, the Judge shut Plaintiff down and Plaintiff can't even remember how many times the Judge shut him down during trial. Plaintiff was also shut down during his closing statement. Plaintiff was not allowed to offer evidence of retaliation although the Judge had allowed him to proceed with the claim and had not let Plaintiff know at any time before trial the retaliation claim was dismissed. The jury ruled in favor of Defendants.

6. After trial Plaintiff informed prison officials he was seeking a transfer and Plaintiff was informed a transfer would be approved.

7. About this same time Plaintiff informed counsel for prison officials that unless he could be provided an off site job per policy he would file the matter in court. The attorneys for prison officials did not respond to Plaintiff's attempt to avoid a court filing but suddenly Plaintiff's plan to transfer was denied and this gave Plaintiff reason to believe prison officials and their counsel were conspiring to keep Plaintiff in the district where he had last been treated so unfavorably by the court in case Plaintiff did in fact file another action.

8. The following officials could have approved Plaintiff's transfer: Josh Panter, Darren Hinson, LaDonna Browning, Stephen Jacobs and Commissioner Brandeshawn Harris, yet none of them would respond to Plaintiff's pleas except for Darren Hinson who repeatedly claimed falsely that Plaintiff had yet to submit a transfer request. In fact, Plaintiff had submitted at least 5 transfer request, 2 of which were sent to directly to Mr. Hinson. Attorney Jodi Harrison, general counsel for Defendants also refused to respond to Plaintiff.

9. After attempting to transfer over a 2-year period, Plaintiff finally sought assistance from N.C. Prisoner Legal Services (NCPLS). NCPLS attempted to make contact with prison officials on several occasions by e-mail but did not get any replies. NCPLS finally told Plaintiff they had never seen a situation where an inmate could not transfer and advised Plaintiff to file a civil 1983, under the fourteenth Amendment for equal protection and discrimination.

10. Plaintiff did exhaust his administrative remedies and the

prison officials responded the security alert was the reason his transfer was denied. (See attached Grievance exhausted)

11. Defendants finally offered Plaintiff a bribe that he could transfer to any prison of his choice, if he would only tear up a grievance outlining the dangers created by staff shortage and demanding closure of the New Hanover prison the way other prisons have had to close for the same.

12. Warden Mr. Donnell required Plaintiff to put in writing where Plaintiff wished to transfer so Plaintiff kept a copy of the bribe agreement as well as a copy of the grievance. Plaintiff also kept copies of his correspondence to prison officials over the 2-year period he attempted to transfer.

13. Plaintiff believes these facts offer proof that prison officials and their attorney(s) conspired together to deny Plaintiff's transfer over a 2-year period and the conspiracy came to an end only after defendants bribed Plaintiff with the grant of a transfer if he did not expose or pursue the dangerous conditions due to severe staff shortages at New Hanover Corr. Center.

14. Plaintiff is seeking damages for a 14th Amendment violation of equal protection and discrimination in that Plaintiff was denied a reasonable transfer over a 2-year period while he observed many of his fellow inmates granted transfer requests.

15. So Defendants cannot so easily mistreat Plaintiff in the future, Plaintiff also seeks to have the security alert add the words underlined added, "Do not move/transfer without Directors approval "unless inmate himself submits transfer request."

16. Plaintiff names the following as Defendants in this issue because all of them had the authority to grant the transfer, yet they all ignored Plaintiff's requests: South Central Region Director Stephen Jacobs, Western Region Director Ladonna Browning, Transfer Coordinators Josh Panter and Darren Hinson.

## RELIEF

Plaintiff wants the Court to know that he did everything he could think of to avoid having to take up this courts time as well as his and the Defendants, yet the Defendants chose to ignore Plaintiff and pretend nothing had been done to violate Plaintiff's Constitutional Rights. Even today, Plaintiff is still willing to put an end to this action if Defendants will simply the following steps to correct this injustice:

1. Dismiss the bogus infraction that never should have written to begin with;

2. Put in writing that as long as Plaintiff is eligible for work release as NCDPS Policy and Procedure allows him to participate at this time, Plaintiff will immediately be granted without fear of discrimination or retaliation by prison officials;

3. that Plaintiff's security alert remain in effect for Plaintiff's protection from retaliation transfers, but so Defendants will be deterred from arbitrarily denying Plaintiff a transfer in the future, add the following underlined words to the current security alerts wording: "Do not move/transfer without Directors approval _unless inmate himself submits transfer request_."

4. If Defendants will agree to these reasonable solutions Plaintiff will cover cost of this action and immediately agree to dismiss this case.

## ALTERNATIVE RELIEF

In the event Plaintiff is left no choice but to proceed further, Plaintiff is seeking a jury trial on the three issues outlined above and seeking along with court costs the following:

1. That the disciplinary action be dismissed and awarding of compensatory and/or punitive damages to be decided by jury;

2. That Plaintiff be allowed to immediately begin participating in the work release program per NCDAC Policy and Procedure and compensatory damages awarded in the amount equal to that Plaintiff could have already earned had he been allowed to participate when he was first eligible; this amount would total at least $50,000 dollars depending on place of employment and could be higher. The average inmates savings is anywhere between $12,000 to $20,000 yearly depending on salary.

3. That the security alert have the underlined words added: "Do not move/transfer without Directors approval unless inmate himself submits transfer request." That Plaintiff be awarded compensatory/punitive damages decided by jury for Plaintiff having been subjected to conspiracy to prevent transfer and subject to bribery to be allowed to transfer

# PRIOR CASES

Since the date of 2003 Plaintiff has filed the following civil cases:

1. OLLIS v. BENNETT, et al., No. 1:08-CV-549-3-MU, filed on October 17, 2003. Dismissed for failure to exhaust remedies.

2. OLLIS v. BYRD, et al., No. 1:08-CV-549-3-MU, filed on December 18, 2008. Settled out of court by settlement agreement.

3. OLLIS v. HARPER, Plaintiff does not have information but case was filed against dentist approximately 2014-15, went to trial and jury decided for Defendants.

4. OLLIS v. CARTER, et al., No. 5:14-CT-3248-BO, filed September 18, 2014. Dismissed for failure to state a claim.

5. OLLIS v. HAWKINS, No. 5:18-CT-3278-D, filed Oct. 4, 2018 went to trial and jury decided for Defendants

D. Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

*Every Defendant is employed by N.C. Division of Adult Correction*

## III. Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

- ☐ Pretrial detainee
- ☐ Civilly committed detainee
- ☐ Immigration detainee
- ☑ Convicted and sentenced state prisoner
- ☐ Convicted and sentenced federal prisoner
- ☐ Other *(explain)* _____

## IV. Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. If the events giving rise to your claim arose outside an institution, describe where and when they arose.

*All events occurred within the prison*

B. If the events giving rise to your claim arose in an institution, describe where and when they arose.

*New Hanover C.C., Rutherford C.C. (explained in attached "STATEMENT OF FACTS")*

C.   What date and approximate time did the events giving rise to your claim(s) occur?

*Within last 3-years and presently ongoing*

D.   What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

*SEE ATTACHED "STATEMENT OF FACTS" FOR ALL DETAILS*

## V.   Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

*No physical injuries*

## VI.   Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

*SEE ATTACHED STATEMENT, PAGE-14 and 15*

## VII.    Exhaustion of Administrative Remedies Administrative Procedures

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures.  Your case may be dismissed if you have not exhausted your administrative remedies.

A.    Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☒ Yes

☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

_NEW HANOVER C.C. and RUTHERFORD C.C. at present_

B.    Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☒ Yes

☐ No

☐ Do not know

C.    Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☒ Yes

☐ No

☐ Do not know

If yes, which claim(s)?

_All 3 issues were grievance exhausted, all attached_

D.     Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☑ Yes

☐ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☑ Yes

☐ No

E.     If you did file a grievance:

    1.    Where did you file the grievance?

_AT BOTH PRISON'S, ALL ATTACHED_

    2.    What did you claim in your grievance?

_SEE ATTACHED GRIEVANCES FOR FULL EXPLANATIONS_

    3.    What was the result, if any?

_AS ALWAYS, PRISON OFFICIALS DENY WRONGDOING_

    4.    What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)*

_ALL GRIEVANCES FULLY EXHAUSTED_

F.  If you did not file a grievance:

    1.  If there are any reasons why you did not file a grievance, state them here:

*ALL GRIEVANCES ATTACHED, FULLY EXHAUSTED*

    2.  If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

G.  Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

*HAVE NUMEROUS DOCUMENTS SHOWING ATTEMPTS TO AVOID THIS ACTION*

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII.  Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☑ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

A.     Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐ Yes

☑ No

B.     If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.   Parties to the previous lawsuit

Plaintiff(s)   _NO CASES PENDING OR FILED ON ISSUES OF_

Defendant(s)   _THIS COMPLAINT_

2.   Court *(if federal court, name the district; if state court, name the county and State)*

_____

3.   Docket or index number

_____

4.   Name of Judge assigned to your case

_____

5.   Approximate date of filing lawsuit

_____

6.   Is the case still pending?

☐ Yes

☐ No

If no, give the approximate date of disposition.   _____

7.   What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

_____

C.     Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

☒ Yes

☐ No

D.  If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

   1.  Parties to the previous lawsuit

       Plaintiff(s)  *PLEASE SEE ATTACHED PAGE 16 FOR*

       Defendant(s)  *FULL EXPLANATION OF THIS PAGE*

   2.  Court *(if federal court, name the district; if state court, name the county and State)*

   3.  Docket or index number

   4.  Name of Judge assigned to your case

   5.  Approximate date of filing lawsuit

   6.  Is the case still pending?

       ☐ Yes

       ☒ No

       If no, give the approximate date of disposition _____

   7.  What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

## IX.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:  APRIL 12, 2025

Signature of Plaintiff  *Johnny Ollis*
Printed Name of Plaintiff  JOHNNY CALVIN OLLIS
Prison Identification #  0306267
Prison Address  P.O. BOX 127, 549 LEDBETTER ROAD
SPINDALE            N.C.        28160
City            State        Zip Code

### B.    For Attorneys

Date of signing:

Signature of Attorney
Printed Name of Attorney
Bar Number
Name of Law Firm
Address
City            State        Zip Code
Telephone Number
E-mail Address